IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| TONY REYES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:19-CV-00037-BU |
| | § | |
| TOM GREEN COUNTY JAIL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff TONY REYES, a former inmate with the Bureau of Prisons ("BOP") and proceeding pro se, filed this civil action on June 6, 2019, complaining of civil rights violations and medical negligence that allegedly occurred during his time as a pretrial detainee held on federal charges at the Tom Green County Jail ("TGCJ"). *See* Dkt. No. 1. The Court granted Reyes permission to proceed *in forma pauperis*, which subjects his complaint to the Court's preliminary screening measures under 28 U.S.C. §1915(e)(2). Dkt. No. 9. And because Reyes filed this suit against government officials while incarcerated, his Amended Complaint is also subject to screening under 28 U.S.C. § 1915A.

Under 28 U.S.C. § 636(b), this civil action was transferred to the undersigned United States magistrate judge to perform the preliminary screening and, in the absence of consent, to file proposed findings of fact, conclusions of law, and recommendations for the disposition of this case. Dkt. No. 18. The undersigned obtained the authenticated TGCJ

1

records and ordered Reyes to complete a screening questionnaire, which he did. Dkt. Nos. 28, 29.

Reyes has not consented to proceed before a magistrate judge. Therefore, the undersigned enters these findings, conclusions, and recommendations. Based on the undersigned's review of Reyes's Complaint, Amended Complaint, questionnaire responses, and the authenticated records, the undersigned recommends that Reyes's claims be dismissed.

## I. PRELIMINARY SCREENING

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v.*

2

*Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). Plaintiffs must plead enough facts to demonstrate that their claims have "substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). This means that the facts pled must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.* 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II. FACTUAL BACKGROUND

In his Amended Complaint, Reyes alleges that: (1) Defendant TGCJ denied him medical care in violation of the Fourteenth Amendment; (2) Defendant Shannon Medical

Center ("Shannon") through its employees violated his constitutional rights and provided intentionally negligent care in violation of the Federal Tort Claims Act ("FTCA"); and (3) TGCJ prevented him from seeing his attorney for three days. Dkt. No. 15 at 5-6.

Reyes's claims arise from his confinement in the TGCJ in 2017 where he was held in the custody of the United States Marshal Service ("USMS") while facing federal charges. Dkt. No. 29 at 2-3. Reyes states that staff at TGCJ were deliberately indifferent to his serious medical needs while a serious infection spread to his leg. *See* Dkt. Nos. 15, 29.

Reyes states that his recollection of the dates related to his claims is uncertain, and asks the Court to consider in screening his claims the USMS "daily logs" that document his activities. *See* Dkt Nos. 15 at 4; 29 at 3-5. Therefore, the undersigned supplements Reyes's factual statements with dates from the authenticated records from TGCJ.[1] *See Wilson*, 926 F.2d at 483–84.

Reyes was booked and medically screened at TGCJ on October 31, 2017. The authenticated prison records show that Reyes had a history of diabetes, foot infections, bilateral 4th and 5th toe amputations, and a May 2017 incident of staph infection in his right foot during an earlier TGCJ incarceration.[2]

Soon after Reyes arrived at TGCJ in October 2017, he claims that he noticed a blister on his left foot. Dkt. No. 29 at 3. He first requested medical care for his left foot on or around November 8, 2017, from "Nurse Sherry," who Reyes claims bandaged the area and

---

[1] Reyes does not dispute the accuracy of the TGCJ records, nor does the undersigned resolve factual disputes with those records unless the records directly contradict Reyes's allegations. *See Davis v. Lumpkin*, 35 F.4th 958 (5th. Cir. 2022).

[2] Reyes does not bring any claims related to this earlier incarceration.

told him the infection was "no big deal."[3] *Id.* On the nurse's illegibly signed assessment dated November 8, 2017, included in the authenticated records, she noted a blister on Reyes's toe, moderate pain, and a history of diabetic foot issues. She also checked a box declining to refer Reyes for further medical evaluation.

Reyes claims that the next day, November 9, he requested medical care again, but Nurse Sherry refused to treat him. *Id.* at 4. Reyes also alleges that, presumably in the same interaction, Nurse Sherry told him to stop complaining or she would "punch him in the face to keep [quiet]." *Id.* at 3.

The same day, November 9, Reyes reported Nurse Sherry to the supervising nurse, Chris LNU, who then arranged for Reyes to be transported to Shannon for treatment.[4] *Id.* at 4-5. The undersigned identified Chris LNU in the authenticated records as James Christopher Dickinson ("Chris"), the medical supervisor at TGCJ. Reyes believes that Chris arranged for treatment at Shannon because of Chris's disagreement with Nurse Sherry's assessment of Reyes. *Id.* at 4. The authenticated records neither confirm not dispute this perception by Reyes.

---

[3] Review of the authenticated records shows that Sheryl Vaughn is a member of the TGCJ medical staff, although there are no records showing she interacted with Reyes during the relevant time period. The same medical records note that "LVN D. McCarter" conducted a soft tissue protocol on Reyes's toe on November 8, 2017, the day he first requested care for his left foot. The undersigned concludes that the medical staff whom Reyes alleges denied him medical care could be either Sheryl Vaughn or LVN D. McCarter. Because the identity of the person whom Reyes alleges denied him medical care is still undetermined, the undersigned will refer that defendant as Reyes named her, "Nurse Sherry".

　　If the district judge finds that any of the claims against Nurse Sherry survive screening, the undersigned recommends that Reyes be permitted limited discovery to identify and serve Nurse Sherry and any unidentified defendants against whom claims survive.

[4] Reyes is unsure of the dates he requested and received treatment, so where not inconsistent with Reyes's allegations, the undersigned supplements dates from the authenticated prison records and Shannon Medical Center records.

At Shannon Emergency Room ("ER"), Reyes states that he was examined by a doctor, and that nursing staff told him that "he did not deserve care" and made comments about him being accused of murder.[5] *Id.* at 6. Reyes states he was discharged with antibiotics and wound care instruction. *Id.* The records show that TGCJ also ordered diabetic shoes for Reyes that same day, November 9.

Upon release his release from the Shannon ER, Reyes continued to receive wound care for his foot at TGCJ. The following day, November 10, Reyes was returned to Shannon ER after a nurse's assessment showed his condition worsening, where he received an x-ray of his left foot, and was released a second time with antibiotics and wound care instructions. When Reyes's foot infection continued to worsen, he was again returned to Shannon on November 11. On that occasion, Reyes claims that due to the increasing severity of the infection, Chris accompanied him to ensure his admission to the hospital. *Id.* at 5-7. Shannon did admit Reyes and diagnosed him with a staph infection and osteomyelitis, which Reyes claims was treatable only by surgery due to the prolonged period of improper treatment. *Id.* at 7.

While admitted at Shannon, Reyes claims that he was subjected to abuse and neglect by Shannon medical staff. Reyes states that "Nurse Angel" intentionally and improperly inserted his IV, causing his right arm to balloon and go numb. *Id.* As a result, Reyes claims Nurse Angel was ordered by Shannon doctors to no longer touch Reyes. *Id.* Reyes also

[5] The undersigned takes judicial notice of this Court's records in Criminal Case No. 6:17-CR-00049-C-BU indicating that Reyes was convicted Possession of an Unregistered Firearm in violation of 26 U.S.C. §§ 5861(d) and 5871. He was sentenced on May 4, 2018, to 46 months imprisonment and was released on 12/23/2020, after serving approximately 31 months.

states that another Shannon nurse called him a "murderer" while packing his wound and intentionally packed the gauze too tight, causing pain and nerve damage. *Id.* at 8.

The prison records show that Reyes was released back to TGCJ on November 14 and received daily medical assessments and wound care. His foot infection, however, continued to worsen, with additional pain and blistering, and the TGCJ records show that Reyes requested and received daily medical care for the foot wound. On November 29, Reyes returned to Shannon ER at the direction of the TGCJ "Jail PA," where it was noted that he ambulated with his wound dressing in place, but that he had "failed outpatient management," and more diagnostics and antibiotics were ordered.

Reyes states that, at his request the following day, November 30, he was again returned to Shannon by USMS transport, whose records note that the TGCJ "Jail PA" ordered Reyes be taken to Shannon for an MRI to "rule out worsening osteomyelitis in left foot." Reyes was admitted and remained in Shannon from November 30 until December 13, receiving treatment for an abscess on his foot, and surgical drainage and debridement procedures. Medical records from this hospital admission note concern for Reyes's situation as an incarcerated person with a history of diabetic foot problems, amputation, and medical non-compliance. Following this hospital admission, Reyes was released back to TGCJ where he received new medication and follow-up appointments with a treating physician.

Reyes states that because TGCJ delayed effective treatment when his symptoms first began, his condition deteriorated to the extent that treatment was limited to surgery or long-term hospitalization. Dkt. No. 15 at 11. As a result of the neglect and abuse from

TGCJ and Shannon, Reyes claims that he continues to suffer circulation and discoloration in the hand that had the IV, as well as pain and possible bone loss due to his leg infection. Dkt. No. 29 at 9.

Reyes also states that TGCJ prevented his criminal defense attorney from visiting him in jail because TGCJ officials told his attorney that Reyes was not incarcerated there. *Id.* at 12. Reyes does not know on what dates his attorney tried to visit, but says that he tried to see him three consecutive days before TGCJ confirmed Reyes's location to his attorney and permitted the attorney to visit. *Id.* Reyes states that he was able to communicate with his attorney by phone during this time. *Id.* Reyes claims he suffered harm from the three-day delay because he was unable to review and accept "an offer given [] by the judge" because he missed the deadline. *Id.*

Reyes seeks compensatory and punitive damages, so that "the cruelty and negligence doesn't happen to others," as well as any other relief the Court finds appropriate. Dkt. No. 15 at 5, 7.

## III.  DISCUSSION AND ANALYSIS

Reyes claims that TGCJ, through Nurse Sherry, violated his Fourteenth Amendment rights through deliberate indifference to his serious medical needs while an infection spread in his foot and leg. *Id.* at 6. Reyes claims that the negligent and intentional infliction of pain by Shannon Medical Center employees Nurse Angel and an unidentified ER nurse led to complications and multiple additional surgeries, which the undersigned construes as a claim for deliberate indifference and medical negligence. Dkt. No. 29 at 5-8. Reyes claims that Shannon Medical Center as an entity is liable under either the FTCA or state law

medical malpractice principles for the allegedly negligent care he received for his infection. Dkt. No. 15 at 5-6. Finally, Reyes claims that TGCJ employees violated his Sixth Amendment rights when they denied in-person access to his attorney for three days. Dkt. Nos. 15 at 6; 29 at 12.

A. Deliberate indifference to serious medical need claims

Reyes's claim that TGCJ and Shannon employees were deliberately indifferent to his serious medical needs is construed as a claim for individual liability against Nurse Sherry, Nurse Angel, and unknown Shannon medical providers whom Reyes alleges denied him medical care. *See* Dkt. Nos. 15, 29.

In his Amended Complaint, Reyes does not state which law he brings the claims under, but his original Complaint states that his claims are under 42 U.S.C. § 1983. *See* Dkt. No. 1 at 1. A federal inmate housed in a county jail may bring a constitutional challenge under Section 1983. *Henderson v. Thrower*, 497 F.2d 125, 125-126 (5th Cir. 1974) (per curiam). The circumstances that led to the plaintiff being under state control—that is, whether being held on state or federal charges—are not the controlling issue; rather, courts consider "the fact of that control and the manner of its exercise." *Id*. Defendants may not escape Section 1983 liability based on a "plaintiff's peculiar status." *Id*. at 126; *see also Stallings v. Beavers*, No. 3:19-cv-1939-S-BN, 2019 WL 4452311, at *1 (N.D. Tex. August 20, 2019), *R & R adopted* 2019 WL 4447563 (N.D. Tex. Sept. 16, 2019) (determining that the plaintiff's status as a federal detainee housed at a county jail does "not convert this ostensible action under 42 U.S.C. § 1983 into one under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).").

And because the persons Reyes complains violated his constitutional rights are state actors, not federal, the undersigned determines that Section 1983 is the proper legal standard to apply below for Reyes's claims of deliberate indifference.

>    i.    *Legal standard for deliberate indifference to serious medical need*

When housed in county jails, federal "pretrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference." *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)). But there is no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs such as medical care. *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996). Thus, courts apply the same deliberate-indifference standard to the medical claims of both pretrial detainees and convicted prisoners. *See Kelson*, 1 F.4th at 418 (citing cases making the same point).

Deliberate indifference "is an 'extremely high' standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009)), and requires satisfaction of both an objective and a subjective component. *Rogers v. Boatwright*, 709 F.3d 403, 410 (5th Cir. 2013). An inmate must first prove objective exposure to a serious medical need that creates substantial risk of serious bodily harm. *Gobert v. Galdwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Id.* at 345–46. Stated another way, a serious medical need is one for which denial of treatment is "much more likely than not to result in serious medical consequences." *Bailey v. Dall.*

*Cnty.*, Civ. Action No. 3:05-CV-0637-B, 2007 WL 9717914, at *3 (N.D. Tex. May 9, 2007) (quoting *Johnson v. Treen*, 759 F.2d 1231, 1238 (5th Cir. 1985)). The objective component is satisfied where, after considering all the facts and circumstances known to the defendant, a reasonable person would have perceived that the inmate was exposed to a substantial risk of serious bodily injury or serious medical consequences. *See Farmer v. Brennan*, 511 U.S. 825, 837-42 (1994); *see also Bailey*, 2007 WL 9717914, at *3.

"But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned" as a constitutional violation. *Farmer*, 511 U.S. at 838. And for this reason, deliberate indifference also requires a subjective component. Satisfaction of the subjective component requires that a prison official (1) knows the inmate faces a substantial risk of serious harm, and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating a prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

"[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (noting that deliberate indifference is a "subjective

inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

A delay in medical care can constitute deliberate indifference if the inaction results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Substantial harm is met when a plaintiff suffers lasting complications from the injury. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). But a disagreement with medical treatment or a failure to provide additional medical treatment by themselves do not constitute deliberate indifference. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Treen*, 759 F.2d at 1238 (to establish a constitutional violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.").

Because a court may use authenticated medical records to pre-screen a prisoner's claims, "medical records of sick calls, examinations, diagnoses, and medications may rebut the allegations" of deliberate indifference to a serious medical need. *Banuelos*, 41 F.3d at 233–35. And where a prisoner claims that the medical treatment provided failed to adequately treat his needs, undisputed medical records showing extensive treatment can be used to rebut a claim of deliberate indifference. *Dimazana*, 122 F.3d at 291-92. Then, the prisoner's claim is essentially one of medical judgment, which may not give rise to a constitutional violation. *See Tijerina v. Stanley*, 804 F. App'x 277, 278 (5th Cir. 2020)

(finding that the "voluminous medical records" established that the prisoner received treatment, reducing his claim to a disagreement about the provided treatment).

        *ii.*     *Deliberate indifference claim against Nurse Sherry*

Reyes claims that Nurse Sherry, as a TGCJ employee or contract-employee, violated his constitutional rights when she was deliberately indifferent to his requests for medical care as a pre-trial detainee. *See* Dkt. Nos. 15, 29. Reyes states that when he first requested care for his foot from Nurse Sherry, she dismissed his condition as "no big deal," and placed a bandage over the wound. Dkt. No. 29 at 3. Reyes claims that when he requested care again the following day, Nurse Sherry told him to stop complaining and threatened to punch him.[6] *Id.* When Nurse Sherry did not provide care, Reyes sought and received medical attention from the supervising nurse Chris who took him to Shannon ER. *Id.* at 4.

Objectively, Reyes did not have a serious medical injury such "that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. On November 8, 2017, the first day Reyes requested medical care, he had a swollen, painful foot, a blister, and a history of diabetic foot issues.[7] The authenticated medical records, which Reyes does not appear to dispute, mirror that assessment. While diabetic foot conditions can be a serious health issue, a diabetic patient with a blister and painful foot is not a condition for which the denial of treatment is "much more likely than not to result in serious medical

---

[6] While the Court could construe a claim for retaliation from Reyes's allegation that Nurse Sherry threatened him with violence for requesting medical care, the undersigned declines to do so here. A threat of violence that is unrealized is not sufficient to state a claim for retaliation, and thus Reyes's allegation would be dismissed for failure to allege plausible facts on which relief may be granted. *See Bell v. Woods*, 382 F. App'x 391 (5th Cir. 2010) (finding that verbal threats are not sufficient to qualify as a retaliatory adverse act, a necessary element for a retaliation claim).

[7] Because Reyes is unsure of the dates of his care, the undersigned references the authenticated records which document his extensive medical treatment during the period in question. *See Norton v. Dimazana*, 122 F.3d 286, 291–92 (5th Cir. 1997).

consequences." *Bailey,* 2007 WL 9717914, at *3 (quoting *Treen*, 759 F.2d at 1238). As alleged, these symptoms do not rise to an objectively substantial risk to Reyes's health. This conclusion is further supported by the fact, discussed below, that when Reyes was taken to the hospital the following day, he was prescribed conservative treatment in the form of medication and diabetic shoes.

Even if Reyes did present with a condition as serious as to satisfy the "objectively serious" standard, he has not alleged facts showing that Nurse Sherry was subjectively indifferent. As Reyes states, Nurse Sherry examined his foot on November 8, bandaged it, and determined that further medical treatment was not required. These actions do not show that Nurse Sherry wantonly disregarded a serious medical need, but instead exercised her medical judgment. Although Reyes disagrees with the treatment provided, that disagreement fails to show deliberate indifference, particularly where, as here, it is undisputed that Reyes received medical treatment the first day her requested it and was taken to the hospital at his request the following day. *See Banuelos*, 41 F.3d at 235 (mere disagreement with course of treatment does not state a constitutional violation).

When Reyes requested medical care again the following day, Reyes alleges that Nurse Sherry ignored and threatened him. While the alleged behavior is "no cause for commendation," Reyes has not shown that Nurse Sherry refused treatment with subjective knowledge of Reyes's risk of serious complications or that his condition worsened from the day before into one involving serious harm or lasting complications. *See Farmer*, 511 U.S. at 838.

In fact, Reyes does not allege that he was denied medical care, but only that his medical care was delayed, and then only briefly. Reyes concedes that he complained the same day to the supervisor Chris LNU about Nurse Sherry's allegedly inadequate response, and that Chris arranged for Reyes to be taken to the Shannon ER, also that same day, where Reyes received diagnostics and prescribed medication. TGCJ records show that jail medical staff ordered a pair of diabetic shoes the same day. And even though Reyes suffered lasting complications with pain, scaring, and loss of bone in his foot, he does not plausibly show that his complications were the result of Nurse Sherry delaying treatment for, at most, one day.

There is no doubt that Reyes suffered from his foot wound and the subsequent surgical treatment at Shannon, exacerbated by his diabetic his condition. That result, however, is not plausibly the result of Nurse Sherry refusing to treat him, ignoring his complaints, intentionally treating him incorrectly, or engaging in any similar conduct that clearly evinces a wanton disregard for a serious medical need. *See Treen*, 759 F.2d at 1238. Here, TGCJ officials timely provided treatment both at the jail and in a free-world hospital. *See Ledezma v. Farthing*, No. PE:08-CV-00007-RAJ, 2008 WL 11422103, at *3 (W.D. Tex. Sept. 22, 2008) (finding that a diabetic prisoner's foot issue, leading to recommendation for amputation, was not deliberate indifference because officials provided ultimately unsuccessful treatment).

For these reasons, the undersigned RECOMMENDS that Reyes's construed claim for deliberate indifference to serious medical need against Nurse Sherry be DISMISSED for failure to state a claim upon which relief may be granted.

### iii.    *Construed deliberate indifference claim against Shannon medical staff*

Because Reyes alleges that Shannon employees Nurse Angel and unknown medical staff intentionally provided harmful care or caused him pain, the undersigned liberally construes his allegations as a claim for deliberate indifference against those employees, in addition to Reyes's FTCA and state law claims for medical negligence, addressed below.[8]

To state a plausible claim for Section 1983 liability, a plaintiff must prove: (1) a deprivation of a right secured by federal law; (2) such deprivation occurred under the color of state law; and (3) the deprivation was caused by a state actor. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). A defendant whose conduct is "fairly attributable to the State" can be sued as a state actor under Section 1983. *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) ("Section 1983 provide a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law. 42 U.S.C. § 1983. Anyone whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983.").

Here, Reyes does not specifically allege that Shannon employees acted under color of state law or that a contract exists between TGCJ and Shannon for the provision of medical services. Rather, Reyes states that he was taken to Shannon to receive emergency medical care while in the custody of TGCJ and USMS. Liberally construing Reyes's complaint, the undersigned concludes for screening purposes that Shannon medical staff provided medical services under a contractual relationship with the TGCJ. *See Loosier v.*

---

[8] Reyes states that he, as an inmate, was not allowed to get names of individual Shannon medical staff. Dkt. No. 15 at 4.

*Unknown Medical Doctor*, 435 F. App'x 302, 307-08 (5th Cir. 2010) (recognizing that private medical provider acting pursuant to contract with state to provide medical care to prisoners may be a state actor).

Turning to the merits of his construed claim, the undersigned considers whether Reyes has stated sufficient facts to show a plausible claim for deliberate indifference to serious medical need by Nurse Angel and unknown medical staff. Reyes claims that "Shannon Medical Center and its employees caused damage to my arm by pushing [an] IV deeper in my arm with tape and stopping blood flow and causing nerve damage . . . ." Dkt. No. 15 at 5. Reyes clams that he "told the nurse to stop and [his] arm swollen [sic] up and turned a different color . . . ." *Id*. In his more definite statement, Reyes provides that the employee was Nurse Angel. Dkt. No. 29 at 7. As a result of this incident, Reyes states that he still suffers skin discoloration and circulation issues in his right hand. *Id*. at 9.

Reyes appears to assert that other unknown medical staff intentionally provided improper or painful treatment because of his status as a detainee. Reyes alleges that "another nurse after surgery" called him a murderer, and intentionally shoved the packing and gauze into his foot wound so far down that the surgeon and another nurse had to "cut it out and reopen the wound and the nurse told her [the offending nurse] to never touch [Reyes] again." Dkt. No. 15 at 5. In his more definite statement, Reyes states that the ER nursing staff on his first visit there "asked 'who did I murder.'" Dkt. No. 29 at 6.

Reyes also claims that the Shannon emergency medical "attending doc" turned him away on three separate occasions when he needed medical treatment for his leg infection. Dkt. Nos. 15 at 6; 29 at 6.

17

The undersigned analyzes these claims under the same deliberate indifference standard set out above. First, while Reyes claims in a conclusory fashion that Nurse Angel intentionally inserted an IV improperly, this Court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collings v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th. Cir. 2000) (quotation omitted). Reyes has not alleged facts plausibly showing that Nurse Angel refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that clearly evinces a wanton disregard for a serious medical need. *See Treen*, 759 F.2d at 1238. Instead, Reyes asks the Court to infer that an improperly inserted IV was an intentionally harmful act. At most, Reyes has alleged a medical negligence claim. And while improper medical treatment would support a state court medical negligence claim, Reyes cannot on that basis state a claim for a constitutional violation here. *See Thompson*, 245 F.3d at 459.

Next, Reyes alleges that an unknown nurse intentionally packed his surgical wound incorrectly while calling Reyes a murderer, requiring removal of the dressing by another nurse and doctor. Reyes states that the USMS documented the incident in the USMS daily log, which is contained in the authenticated records, and does not dispute the accuracy of those logs. *See* Dkt. No. 29 at 8. There, the USMS logs document each nurse visit, bandage change, and IV placement, but do not note any complications, much less intentional harm. As alleged, Reyes provides insufficient facts for the undersigned to find a plausible claim for deliberate indifference.

And finally, Reyes claims that the attending physician at Shannon ER "turned him away" three times. Here, Reyes fails to allege consistent facts to plausibly support this

18

claim. Reyes's own factual allegations state that the first time he went to Shannon ER, he was discharged with antibiotics and treatment directions, not that he was turned away. *Id.* at 6. When he returned to the ER the following day, Reyes admits that he received diagnostics, antibiotics, and wound care instructions. Reyes does not allege facts plausibly supporting that the ER physicians turned him away or refused him care. Any complaints Reyes has about the care he received amounts at most to a disagreement about his care, which fail to show deliberate indifference. *See Banuelos*, 41 F.3d at 235.

Although given ample opportunity to fully state his claims to the Court through his Complaint, Amended Complaint, and magistrate judge's questionnaire, the undersigned FINDS that Reyes has not sufficiently alleged facts plausibly showing that Shannon medical staff were deliberately indifferent. The undersigned RECOMMENDS any construed claim against the Shannon employees be DISMISSED for failure to state a claim upon which relief may be granted.

B.  FTCA claims against Shannon Medical Center

Reyes claims that the Shannon Medical Center is liable under the FTCA for providing negligent medical care and subjecting him to intentional abuse and pain during his treatment. Dkt. No. 15 at 5-6. Reyes asserts that Shannon, a private medical facility, is covered by the FTCA because USMS contracted there for medical services, and Reyes received medical care at Shannon while in USMS custody. *Id.* He does not claim that the Shannon employees were federal employees. But, Reyes claims, Shannon Center

employees should be treated as federal *contract* employees for FTCA purposes.[9] *See* Dkt. Nos. 1, 15, 29.

"The FTCA confers on federal courts exclusive jurisdiction of civil actions on claims against the United States for money damages for personal injury caused by the negligent or wrongful acts or omissions of any federal employee while acting within the scope of his office or employment." *Esquivel-Solis v. United States*, 472 F. App'x 338, 339 (5th Cir. 2012) (citing 28 U.S.C. § 1346(b)(1)). Through the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008); *see also* 28 U.S.C. § 1346(b)(1). But because the FTCA is a waiver of sovereign immunity, "the limitations and conditions upon which the government consents to be sued must be strictly construed in favor of the United States." *Atorie Air, Inc. v. F.A.A. of U.S. Dept. of Transp.*, 942 F.2d 954, 958 (5th Cir. 1991) (citing *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981)).

One such limitation is that the government's consent to be sued for actions of federal employees "does not extend to the acts of independent contractors." *Broussard v. United States*, 989 F.2d 171, 174 (5th Cir. 1993). If the act was not committed by an employee of the federal government, the court must dismiss for lack of subject matter jurisdiction. *Id.* at 176.

---

[9] In his original Complaint, Dkt. No. 1, later superseded by his Amended Complaint (Dkt. No. 15), Reyes asserts that Shannon Medical Center employees should be held liable for negligence under 42 U.S.C. § 233(g) as Public Health Services employees operating within the scope of their employment or contract. Dkt. No. 1 at 7-8. Upon review of the cited law, Reyes has not shown that Shannon employees meet the statutory requirements to allow conversion of a private sector employee into a Public Health Services employee for the purposes of liability. Further, Reyes abandoned this argument by not asserting it in his Amended Complaint. *See* Dkt. No. 15.

Here, Reyes has not plausibly alleged that Shannon employees are employees of the United States. On a plain reading of the statute, the FTCA does not provide a basis for a claim against Shannon employees. As alleged, Shannon is a private, free-world medical facility, not a federal facility, using its own instrumentalities and private employees to provide care. Reyes has failed to state a non-frivolous FTCA claim against Shannon and its employees.

For these reasons, the undersigned RECOMMENDS that Reyes's FTCA claims against Shannon Medical Center be DISMISSED with prejudice as frivolous.

C. Pendant state law claims for medical negligence

Reyes asserts claims for medical negligence under state tort law, essentially asking the Court to exercise supplemental jurisdiction to enforce claims made against Shannon and its employees under state civil law. Dkt. No. 1 at 8-9.

In the preceding analysis, the undersigned has recommended that the Court dismiss Reyes's federal law claims. Ordinarily, when the federal claims are dismissed before trial, the court may decline to exercise supplemental jurisdiction and dismiss pendent state claims as well. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996); *St. Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (citing 28 U.S.C. § 1367(c)). The decision to exercise supplemental jurisdiction is discretionary and subject to the Court's determination when all original jurisdiction claims have been dismissed. *St. Germain*, 556 F.3d at 263-64 (citing § 1367(c)).

Here, because the undersigned recommends dismissal of all federal law claims, the Court should decline to exercise supplemental jurisdiction over any remaining state civil

law claims. The undersigned RECOMMENDS that the Court DISMISS Reyes's state civil law claims without prejudice, so that he may replead those claims in a Texas state court.

### D. Tom Green County Jail as a non-jural entity

Reyes confirmed in his more definite statement that he intends to sue TGCJ for denying him appropriate medical care for his foot infection. *See* Dkt. No. 29 at 11. The Court afforded Reyes the opportunity to name individual defendants whom he believes are responsible for the violation of his constitutional or federally protected rights, and Reyes responded simply that "[he] was not given or allowed to obtain the proper information." *See id.*

A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–314 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id*. at 313.

TGCJ is a non-jural entity incapable of being sued. *Smith v. Tom Green Cnty. Jail*, No. 6:17-CV-0055-BL, 2018 WL 3873665, at *8 (N.D. Tex. Aug. 15, 2018) (finding that the TGCJ lacks a separate legal existence and dismissing claims against it as frivolous); *see also Tello v. Eastland Cnty. Jail*, No. 1:17-CV-105-BL, 2018 WL 3543698, at *2 (N.D. Tex. July 23, 2018) (Eastland County is a non-jural entity); *see also Edwards v. Dallas Cnty. Jail Med. Dep't*, No. 3:07-CV-0886-G, 2007 WL 2687615, at *2 (N.D. Tex. Sep. 13, 2007) (Dallas County Jail is a non-jural entity). For this reason, Reyes cannot bring a claim

against TGCJ, and the undersigned RECOMMENDS that his claims against TGCJ be DISMISSED as legally frivolous.

E. Denial of access to Reyes's attorney

Finally, Reyes claims that TGCJ prevented his attorney from visiting him for three consecutive days. Dkt. Nos. 15 at 6; 29 at 12. Reyes alleges that for two days, TGCJ staff turned away his attorney for an in-person visit, allegedly saying that Reyes was not at the facility. *Id.* On the third day, Reyes states that from within TGCJ, he called his attorney who was in the TGCJ lobby at the time. Dkt. No. 15 at 6. While on the phone, Reyes's attorney was able to gain admittance by telling TGCJ staff that Reyes was "on the phone and in [his] cell." *Id.*

Reyes fails to state a plausible claim for a violation under the Sixth Amendment for denial of access to his attorney. Reyes's Sixth Amendment right to counsel might be implicated if he was denied all communication with his attorney for three days. *See Tucker v. Randall*, 948 F.2d 388, 390-91 (7th Cir. 1991). But accepting Reyes's allegations as true, he claims only that TGCJ prevented his attorney from visiting *in-person* for three days, during which time he had the ability to communicate with his attorney by telephone. Dkt. No. 15 at 6. Ultimately, Reyes does not allege sufficient facts plausibly showing that his inability to meet in-person with his attorney caused any harm to him in connection with his pending criminal charges. *See* Dkt. Nos. 29 at 12-13.

Moreover, Reyes does not allege an individual responsible for the deprivation. And even if the Court construes this claim as one against the Sheriff or Tom Green County, Reyes's claim still fails. To hold a municipality liable under Section 1983 "requires proof

23

of three elements:  a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (citations omitted).

Notably, the Supreme Court expressly rejected *respondeat superior* liability under Section 1983, including in the context of municipal liability, because of the statutorily required *actual* culpability, versus constructive or vicarious culpability. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 693 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997) (discussing that the municipal liability inquiry under Section 1983 should not collapse into a *respondeat superior* analysis).

An "official policy" may take the form of a formal policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmakers or by an official to whom the lawmakers have delegated policymaking authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). In addition, an official policy may also be in the form of "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that," in effect, "fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam). In such cases, the custom or practice has the "force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

But to establish a particular practice as a widespread or persistent enough as to amount to a policy for Section 1983 purposes, Reyes must show that there was "a pattern

24

of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001). Typically, a single "act is not itself a custom." *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). Isolated violations are not usually viewed as the "persistent, often repeated, constant violations, that constitute custom and policy" as required for municipal Section 1983 liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). Moreover, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnotes and citations omitted).

Finally, in limited circumstances, "[o]ne way of establishing liability is to show that a policymaker ratified the acts of a subordinate." *Young v. Bd. of Supervisors of Humphreys Cty., Mississippi*, 927 F.3d 898, 903 (5th Cir. 2019). However, this theory is limited to "extreme factual situations." *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 847 (5th Cir. 2009). And "unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

Here, Reyes has failed to allege either a policymaker, a policy, or an underlying violation of his constitutional rights in connection with his temporary inability to visit in-person with his attorney. For these reasons, the undersigned RECOMMENDS that (1) Reyes's Sixth Amendment claims against the TGCJ be DISMISSED with prejudice as legally frivolous, and (2) and any construed claims for Sixth Amendment violations by

Reyes against the Sheriff and Tom Green County be DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

## V.  CONCLUSION

In conclusion, the undersigned finds that Reyes has failed to state a plausible or non-frivolous claim for against Tom Green County Jail and its employees, Shannon Medical Center and its employees, and the United States. For these reasons, the undersigned United States magistrate judge RECOMMENDS that Reyes's claims against these defendants for deliberate indifference to serious medical need, for negligence under the FTCA, and for denial of access to his attorney be DISMISSED with prejudice under 28 U.S.C. §§1915(e)(2) and 1915A. The undersigned further RECOMMENDS that Reyes's state law medical negligence claims against Shannon Medical Center and its employees be DISMISSED without prejudice for lack of subject matter jurisdiction.

## VI.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written

objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VII.  TRANSFER OF CASE

Having completed the preliminary screening of Reyes's claims under 28 U.S.C. §§ 1915(e)(2) and 1915A, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 6:19-CV-00037-H.

ORDERED this 1st day of August, 2022.


                                      JOHN R. PARKER
                                      UNITED STATES MAGISTRATE JUDGE